IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GRAPHIC COMMUNICATIONS    *
CONFERENCE / INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,    *
LOCAL 285
   *

   *

     Plaintiff,
   *

       v.                    Civil Action No. _____
   *

QUEBECOR WORLD PREMEDIA -
WASHINGTON    *

   *

     Defendant.
\*    \*    \*    \*    \*    \*    *

## COMPLAINT

Graphic Communications Conference Local Union No. 285 ("Local 285" or the "Union"), affiliated with the International Brotherhood of Teamsters, by its attorneys Peer & Gan LLP hereby sues Defendant Quebecor World Premedia-Washington ("Quebecor" or "Defendant") for breach of a collective bargaining agreement and to compel arbitration pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (the "Act"), and states as follows:

     1.      This Court has jurisdiction under 29 U.S.C. § 185 and 28 U.S.C. §§ 1331 and 1337.

     2.      Venue in this action is appropriate under 28 U.S.C. § 1391(b) and (c).

     3.      Local 285 is an unincorporated labor organization, headquartered in Washington, DC, representing employees of the Defendant in an industry affecting commerce within the meaning of 29 U.S.C. §§ 142, 152(5) and 185.

4.     Defendant is an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§ 142, 152(2) and 185. Defendant is an employer whose activities affect commerce as that term is defined in the Act.

5.     Local 285 and the Defendant have been parties to collective bargaining agreements covering the terms and conditions of employment of the employees in the bargaining unit represented by Local 285 at the Defendant's Lanham, Maryland facility. The term of the collective bargaining agreement ("CBA") which was in effect at all times material to this action runs from May 1, 2005 through April 30, 2008. The CBA is attached as Attachment A.

6.     The parties have no dispute over the formation of the CBA.

7.     Article 18 of the CBA provides for final and binding arbitration of disputes between the parties.

8.     Article 24 of the CBA contains provisions concerning seniority and layoffs.

9.     A dispute has arisen between the parties concerning Defendant's employment practices regarding the terms and conditions of employment of Tyanthony Weaver ("Weaver") and William M. Anthony ("Anthony"), bargaining unit employees of Defendant covered by the CBA.

10.     Specifically, on or about June 16, 2006, Quebecor permanently laid off bargaining unit employees Weaver and Anthony from their positions at the Defendant's Lanham, Maryland facility.

11.     By the actions described in paragraph 10, above, the Defendant breached Article 24 of the CBA.

12.     On or about June 16, 2006, Local 285 timely filed two grievances with respect to the actions described in paragraph 10, above.

13.    The grievances were timely processed through the first three steps of the grievance procedure as set forth in Article 18 of the CBA. The grievances were not resolved by the parties during this process.

14.    The grievance disputes are arbitrable matters regarding an interpretation or application of the terms of the CBA.

15.    In accordance with the CBA, on October 17, 2006, Local 285 requested the Federal Mediation and Conciliation Service to submit to the parties two lists of nine arbitrators for the purpose of selecting arbitrators to decide these two grievances.

16.    By letter dated October 30, 2006, Local 285 demanded that, by November 6, 2006, Quebecor submit to the arbitrator selection and grievance arbitration process as required by the CBA. To date, Quebecor has not responded to Local 285's demand.

17.    Despite the facts as set forth above, the Defendant has refused to participate in the selection of the arbitrators and to proceed to arbitration on the subject grievances.

18.    By breaching the CBA as described above, and by refusing to proceed to arbitration on the grievance filed by Local 285 to redress this breach, the Defendant is causing harm and damage to Local 285 and to the employees of the Defendant who are represented by Local 285.

WHEREFORE, Plaintiff GCIU Local Union No. 285 prays that this Honorable Court:

A.    Order Defendant to proceed to arbitration with Plaintiff over the grievances described above pursuant to the terms of the collective bargaining agreement;

B.    Award Plaintiff the costs and attorneys' fees incurred in bringing this action; and

C.    Grant Plaintiff such other and further relief as this Court deems just or proper.

Respectfully submitted,

Mark Gisler
DC Bar No. 474628
Peer & Gan LLP
1730 Rhode Island Ave., NW, Suite 307
Washington, DC 20036

Attorneys for Plaintiff

Date: November 9, 2006

# ATTACHMENT A

# COLLECTIVE BARGAINING AGREEMENT

## BETWEEN

## GRAPHIC COMMUNICATIONS CONFRENCE / INTERNATIONAL BROTHERHOOD OF TEAMSTERS (IBT)



## LOCAL 285M

## AND

## QUEBECOR WORLD PREMEDIA WASHINGTON

## MAY 1, 2005 TO APRIL 30, 2008

# COLLECTIVE BARGAINING AGREEMENT

## QUEBECOR WORLD PREMEDIA WASHINGTON

### AND

## LOCAL 285
## GRAPHIC COMMUNICATIONS CONFERENCE – INTERNATIONAL BROTHERHOOD OF TEAMSTERS

### May 1, 2005 – April 30, 2008

# TABLE OF CONTENTS

ARTICLE 1 — AGREEMENT..........................................4
ARTICLE 2 — LIAISON COMMITTEE..................................4
ARTICLE 3 — RECOGNITION........................................4
ARTICLE 4 — JURISDICTION.......................................5
ARTICLE 5 — INDIVIDUAL CONTRACTS...............................5
ARTICLE 6 — HIRING.............................................5
ARTICLE 7 — UNION SHOP.........................................6
ARTICLE 8 — AGENCY SHOP........................................6
ARTICLE 9 — MANAGEMENT RIGHTS..................................7
ARTICLE 10 — SANITATION........................................7
ARTICLE 11 — MINIMUM WAGE SCALES...............................7
ARTICLE 12 — SCANNER...........................................8
ARTICLE 13 — IMAGING TECH TRAINEES.............................8
ARTICLE 14 — PRE-PRESS SUPPORT.................................8
ARTICLE 15 — PIECE WORK AND BONUS..............................9
ARTICLE 16 — VIOLENCE PREVENTION...............................9
ARTICLE 17 — NON-DISCRIMINATION...............................10
ARTICLE 18 — GRIEVANCE AND ARBITRATION........................11
ARTICLE 19 — NO STRIKE-NO LOCKOUT.............................12
ARTICLE 20 — DISCPLINARY NOTICE...............................13
ARTICLE 21 — HOURS............................................13
ARTICLE 22 — CALL-IN AND REPORTING PAY........................15
ARTICLE 23 — REDUCED HOURS....................................15
ARTICLE 24 — SENIORITY........................................16
ARTICLE 25 — OVERTIME.........................................16
ARTICLE 26 — LUNCH PERIOD.....................................17
ARTICLE 27 — HOLIDAYS.........................................17
ARTICLE 28 — VACATION/JOURNEYMEN..............................18
ARTICLE 29 — SCHEDULING VACATION/JOURNEYMEN...................20
ARTICLE 30 — VACATION/IMAGE TECHNICIANS.......................20
ARTICLE 31 — JURY DUTY........................................22
ARITCLE 32 — BEREAVEMENT LEAVE................................22
ARTICLE 33 — LEAVE COVERAGE...................................22
ARTICLE 34 — NOTIFICATION OF LAYOFF...........................22
ARTICLE 35 — SEVERANCE PAY....................................23
ARTICLE 36 — SHOP DELEGATE....................................23
ARTICLE 37 — FULL-TIME UNION SERVICE..........................23
ARTICLE 38 — UNION ACCESS.....................................23
ARTICLE 39 — BULLETIN BOARD...................................24
ARTICLE 40 — HEALTH AND WELFARE FUND..........................24
ARTICLE 41 — PAYMENT OF WAGES.................................25
ARTICLE 42 — SUPPLEMENTAL RETIREMENT AND DISABILITY FUND......25
ARTICLE 43 — STRUCK WORK......................................26
ARTICLE 44 — NEW MACHINES OR PROCESSES........................27
ARTICLE 45 — TECHNOLOGICAL DEVELOPMENT........................27
ARTICLE 46 — IDENTIFICATION OF WORK...........................28
ARTICLE 47 — PLANT REMOVAL....................................28
ARTICLE 48 — NO TRANSFER OF EQUIPMENT.........................28
ARTICLE 49 — DEFAULT IN PAYMENTS..............................28

ARTICLE 50 – DUES CHECK-OFF.....................................29
ARTICLE 51 – CHECK-OFF AUTHORIZATION............................29
ARTICLE 52 – CREDIT UNION CHECK-OFF.............................29
ARTICLE 53 – SUBCONTRACTING.....................................29
ARTICLE 54 – PICKET LINES.......................................29
ARTICLE 55 – AGREEMENT CONTINUITY...............................30
ARTICLE 56 – SEPARABILITY.......................................30
ARTICLE 57 – INTERNATIONAL APPROVAL.............................30
ARTICLE 58 – DURATION OF CONTRACT...............................31

## ARTICLE 1 – AGREEMENT

Section 1. This contract, made and entered into this 1st day of May, 2005 is between Washington D.C. Local 285, Graphic Communications Conference – International Brotherhood of Teamsters, hereafter know as the Union, and Quebecor World Premedia – Washington, D.C. its successors or assigns, hereafter known as the Company.

Section 2. The purpose of the Company and the Union entering into this contract is set forth in their Agreement, rates of pay, hours of work and other conditions of employment, so as to promote orderly and peaceful relations with the employees; to secure the highest level of employee performance consistent with safety, good health and sustained effort.

## ARTICLE 2 – LIAISON COMMITTEE

It is agreed that a Joint Labor-Management Liaison Committee, with at least three members selected by the Company and at least three by the Union, will be established to study and review procedures under this contract and analyze industry problems, including health and safety procedures, with a view to creating and maintaining effective, orderly and amicable relations for the mutual benefit of the Company and Union and the advancement of the industry.

## ARTICLE 3 – RECOGNITION

Section 1. The Company recognizes Washington, D.C. Local 285, Graphic Communications Conference – International Brotherhood of Teamsters, as the exclusive representative for the purpose of collective bargaining in respect to rates of pay, hours of employment or other conditions of the employment for all employees performing work described in the Jurisdiction section of this contract.

Section 2. The Company agrees that during the term hereof and during any negotiations for the renewal or extension hereof or for any successor contract hereto, it will not sign any contract nor make any written agreement of any kind with any other union relating to any jobs or work covered by this contract.

Section 3. The Company agrees that in the event that any of the jobs or work described in the Jurisdiction Article of the Agreement are removed by action of the Company, for the purpose of moving jobs and or work to a non-union facility in the general, metropolitan Washington, D.C. area, the Union may in its discretion submit the matter to the Joint Standing Committee under the provisions of Article 18 – Grievance and Arbitration.

## ARTICLE 4 – JURISDICTION

All employees performing any of the following work shall without
limitation, be covered by the terms of this contract; all work,
processes operations and products directly related to
Lithography, Offset (including dry or wet), Photoengraving,
Itaglio, Gravure, Desktop Publishing; for purpose of printing, or
evolution from any work process, or operation now or hereinafter
utilized in the methods of reproducing images of all kinds in the
printing methods described above.  Only members of the bargaining
unit shall perform work under the jurisdiction of the Union,
except for purposes of training and/or instructing an employee,
or in the event of an emergency where work cannot be completed in
accordance with a customer's requirement.  The parties further
agree that testing, research and development, or activities not
directly resulting in the production of live work will not be
considered bargaining unit work.

## ARTICLE 5 – INDIVIDUAL CONTRACTS

No individual employment contracts for employees performing work
described in the Jurisdiction Article of this contract, for the
purpose of avoiding the terms and conditions of this contract,
shall be entered into unless by consent of both parties hereto.

## ARTICLE 6 – HIRING

Section 1. The Company agrees to notify the Union of all position
vacancies covered by the Jurisdiction Article of this Agreement
and to consider for hire applicants referred to the Company from
the Union.  The Union agrees to refer applicants for available
jobs in a non-discriminatory manner.  New hires in all
classifications will be on a six (6) month probation period.

Section 2. The Company and the Union agree that they shall not
discriminate either directly or indirectly against any employee
or applicant for employment because of race, color, creed,
national origin, religion, sex or age.

Section 3. The Company agrees to notify the Shop Delegates in
writing of:

    a.    Any employee described in the Jurisdiction Article who
is hired and the classification for which he is hired.

    b.    Any employee described in the Jurisdiction Article who
is discharged or laid off and reasons therefore.

    c.    Any employee described in the Jurisdiction Article who
quits his position.

5

## ARTICLE 7 – UNION SHOP

Section 1. It shall be a condition of employment that all employees of the Company covered by this Agreement who are members of the Union in good standing on the effective date of this contract shall remain members in good standing.

Section 2. It shall be a condition of employment that those employees who are not members of the Union on the execution date of this contract shall, on or before the thirtieth day following the execution date of this contract, become and remain members in good standing in the Union.

Section 3. It shall also be a condition of employment that all employees covered by this contract and hired on or after the execution date shall, on or before the thirtieth day following the beginning of such employment, become and remain members in good standing in the Union.

Section 4. Any employee covered under Section 2 and 3 above who fail to become a member of the Union as therein provided or to whom membership is denied because of his failure to tender initiation fees or dues then within ten (10) days after written notice to the Company from the Union, the Company shall discharge such employee.

Section 5. If membership of any employee shall be terminated because of his failure to tender Union dues, then within ten (10) days after written notice to the Company from the Union, the Company shall discharge such employee.

## ARTICLE 8 – AGENCY SHOP

In any State wherein Section 1, 2 and 3 in Article 7 of this Agreement cannot be made effective because of State law, all present employees not members of the Union, and all employees hereafter employed in the classifications covered by this Agreement who do not become members of the Union, shall as a condition of employment contribute $___ per ___ to the Union for the administration of this contract on their behalf within thirty (30) days from the beginning of their employment or from the date this Agreement is executed or goes into effect, whichever is later.  Any employee who fails to do so shall be discharged within ten (10) days after written notice from the Union.  The Union represents that the amount required to be contributed hereunder is not in excess of the regular Union dues of employees covered by the Agreement who are or become members of the Union.

## ARTICLE 9 — MANAGEMENT RIGHTS

The Company retains the sole right to manage its business, to make all decisions and to take whatever action it deems necessary in connection therewith, except as modified by the provisions of this Agreement.

## ARTICLE 10 — SANITATION

The Company shall furnish at all times as sanitary, properly ventilated, properly heated and well-lighted space for the performance of all work, and the sanitary condition shall not be less than standards and codes recommended by the legally-authorized health authorities of the area in which the plant is located.

## ARTICLE 11 — MINIMUM WAGE SCALES

Section 1. The minimum wage scales listed shall continue without change during the life of this Agreement, except as hereinafter provided or as may be mutually agreed between the parties hereto. It is understood that employees now receiving above minimum wage rates provided shall not be reduced.  It is further understood that the Company may adjust premiums at any time for Journeymen who receive premiums after May 1, 1992 and for Image Technicians regardless of when they received a premium.

Section 2. Scale and general increases shall be as follows:

|  | Effective July 18, 2005 | Effective May 1, 2006 | Effective May 1, 2007 |
|---|---|---|---|
| **Journeyman** |  |  |  |
| Day Shift | $25.42 | $25.93 | $26.45 |
| Night Shift | $26.72 | $27.23 | $27.75 |
| Third Shift | $27.46 | $27.97 | $28.49 |
|  |  |  |  |
| **Image Technician Level III** |  |  |  |
| Day Shift | $25.42 | $25.93 | $26.45 |
| Night Shift | $26.42 | $26.93 | $27.45 |
| Third Shift | $26.92 | $27.43 | $27.95 |
|  |  |  |  |
| **Pre-Press Support** |  |  |  |
| Day Shift | $14.36 | $14.65 | $14.94 |
| Night Shift | $15.36 | $15.65 | $15.94 |
| Third Shift | $15.86 | $16.15 | $16.44 |

Section 3. A Journeyman may be trained in other classifications for purposes of broadening their skill base and/or to cover openings in another classification if their work load permits. Employment decisions will be based on their regularly assigned classifications.

Section 4. All wages are to be paid on a designated payday each week.  If payday falls on a holiday, wages shall be paid the previous working day.

### ARTICLE 12 - SCANNER

The operation of the scanner shall first be assigned to the employees qualified as of the effective date of this contract.

Scanner premiums are grandfathered for recipients prior to May 1, 1992 and are eliminated for future operators after May 1, 1992. The minimum scale of wages grandfathered for the operator of the single color scanner shall be $56.00 per week above the weekly wage scale for Journeymen as set forth in this contract.

### ARTICLE 13 - IMAGING TECH TRAINEES

Section 1. Imaging Tech Trainees shall serve a probationary period of six (6) months, which shall be credited to the progression schedule, if the Trainee's performance on the job during this period is mutually satisfactory to the Company and the Union, and such trainee is to continue in his employment.

Section 2. The minimum weekly wage for Imaging Tech Trainees for a regular weekly schedule of working hours herein provided shall be based on a percentage of the top wage rates for Imaging Tech, as follows:

Start to 1 year 60% Imaging Tech scale for the entire first year

1 to 2 years    70% Imaging Tech scale for the entire first year

2 to 3 years    80% Imaging Tech scale for the entire first year

3 to 4 years    90% Imaging Tech scale for the entire first year

These rates shall be compressed in the event the length of the Trainee's training period is shortened.

### ARTICLE 14 - PRE-PRESS SUPPORT

There may be employed an employee to perform the following duties:

    1.    Maintenance of film processing
    2.    Change processor chemistry and mix chemicals

3.    Cut down and collate film
4.    Mount and dismount copy on scanner
5.    Opaque
6.    Pre-flighting
7.    Cutting clipping paths
8.    CSR Support

Work performed by Pre-Press Support employees is not exclusive and can be performed by Journeymen or other employees pursuant to prior practices consistent with the collective bargaining agreement.

a.    If a Pre-Press Support employee is employed by the Company, no Journeyman or Imaging Technician can be laid off due to a reduction in force for lack of work until all Pre-Press Support employees have been laid off first.  In the event the Company has a Journeyman or Imaging Technician on temporary layoff subject to recall, no Pre-Press Support employee can be hired until the Journeyman or Imaging Technician is recalled pursuant to this Collective Bargaining Agreement. In this context, laid off does not mean disciplinary suspensions or discharge for cause.

## ARTICLE 15 – PIECE WORK AND BONUS

It is further agreed by the Company that no piece work or bonus system will be inaugurated in relation to any employees covered by this contract.

## ARTICLE 16 – VIOLENCE PREVENTION

Section 1. Purpose and Content

The parties to this Agreement are committed to providing a safe environment for employees, customers and visitors on our premises. To this end, the parties hereto agree that there shall be zero tolerance for violent conduct and/or behavior of any kind whatsoever on the premises, or off the premises if directed toward an employee, customer, visitor to the Company or their respective property.  An employee who displays or threatens violence on the premises or off the premises toward an employee, customer or visitor to the Company is subject to immediate termination.  Talking or joking about violent conduct or behavior by an employee will not be tolerated and will subject such employee to disciplinary action, up to and including discharge.

Section 2. Definition of Violence

Violence, violent conduct and/or violent behavior is defined as threatening or physically harming, shoving, pushing, harassing,

9

intimidating, stalking, coercing, threatening or talking of punishment, getting even, "getting of another", or damaging or threatening to damage property of employees, customers, visitors, and/or the Company, and any other form of threatening and/or harmful behavior.

Section 3. Duty to Report

Every employee has a responsibility to prevent violence on the Company's premises or away from the premises if it involves employees, customers or visitors to the Company. Employees have an obligation to report directly to management, various forms of violent conduct, including but not limited to incidents described in Section 2 of this Article, behavior indicating a propensity for, or conducive to violent conduct or behavior, overt threats of violence or even excessive overreaction to events, and any other incident that may involve a violation of Company policy. The Company will notify the Union of any such reports.

Section 4. Investigation

All reports of violent behavior or behavior that is potentially violent, will be investigated by the Company.  It is the duty of all employees to cooperate with any such investigation, and provide timely and accurate information to Company representatives investigating matters of this nature. Information obtained from employees will be held in confidence, except where there is a need to know in order to remedy the problem.

Section 5. Retaliation

Any employee who retaliates against another person for making a report or cooperating in an investigation under this Article will be subject to severe disciplinary action, up to and including discharge.

### ARTICLE 17 – NON-DISCRIMINATION

Section 1. The Company and Union agree that provisions of this Agreement shall apply to all bargaining unit employees equally and that neither party, its agents, employees or representatives will discriminate against any employee or applicant for employment because of such employee's race, creed, color, sex, age, national origin, religion, handicap or military status or service, or qualified employees with disabilities.

Section 2. If any government agency, including the Equal Employment Opportunity Commission, requires the Company and/or the Union to modify any part of the Agreement to prevent or remedy past or future discrimination, the Company and the Union agree to meet and make such a required change.

Section 3. As used herein, the male gender shall include the female gender and the female gender shall include the male gender, unless the context clearly provides otherwise.

## ARTICLE 18 - GRIEVANCE AND ARBITRATION

Section 1. A Joint Standing Committee shall be created, consisting of two representatives selected by the Company and two representatives selected by the Union. With the exception of the renewal of an expiring Agreement, all disputes or controversies, including alleged breach of contract, which cannot be adjusted, shall be referred to the Joint Standing Committee for consideration, adjustment or decision. A majority decision of the Committee as this constituted shall be final and binding upon the parties.

Section 2. In case of dispute under this Agreement or its interpretation, the Shop Delegate shall take up the matter in dispute with management within two (2) days of its alleged occurrence. In the event of failure to adjust the matter in dispute within three (3) days, the officials of the Local Union shall be called in to seek an amicable adjustment of the differences. Should no settlement of the dispute be reached between the last mentioned parties within five (5) days, the grievances shall be put in writing and submitted to the Joint Standing Committee. Failing to reach a decision within ten (10) days after submission of the grievance, then either of the parties may request Federal Mediation Service to furnish a list of nine (9) names. The Arbitrator will be selected by each party in turn striking four (4) names from the list; the party requesting arbitration striking the first name and the remaining name shall become the Arbitrator. If the remaining name is unable to serve as an Arbitrator, another list of nine (9) names shall be requested from the Federal Mediation Service. The Arbitrator shall have jurisdiction and authority to interpret and apply the provisions of this Agreement, insofar as necessary, to determine such grievance. The decision of the Arbitrator shall be binding on all parties and the expense of the Arbitrator, if any, shall be borne equally by both parties. The Union's right to strike or the employee's refusal to work under clauses: Recognition, New Machines or Processes, Struck Work, Chain Shop, hereof, are not subject to arbitration.

Section 3. Working and other conditions prevailing immediately prior to the action that initiates the dispute shall be preserved unchanged until a decision has been rendered.

Section 4. In consideration of the foregoing arrangement for the adjustment of grievances or settlement of disputes, both parties to this Agreement accept this procedure as the sole and exclusive method of seeking adjustment.

## ARTICLE 19 - NO STRIKE-NO LOCKOUT

Section 1. During the term of this Agreement, neither the Union, its officers, agents or members, nor any employee, will authorize, instigate, aid, condone, or engage in any picketing, work stoppage, strike, sympathy strike, slowdown or stoppage or work, sit-down, stay-in, walk-out, concerted slowdown, any individual or concerted refusal to use equipment, materials and supplies furnished by outside sources, or any other interference with, restriction of, interruption to, or any impeding of production or distribution at the facility covered under this Agreement, or any boycott of the Company or its customers.

Section 2. The Company agrees that during the term of the Agreement there shall be no lockouts. Normal reductions in operations caused by work fluctuations shall not be deemed a lockout under this Agreement.

Section 3. During the term of this Agreement, both the Company and Union will exert their maximum effort at all times to prevent and attempt to stop any lockouts or interruptions of work, picketing or boycotts, as provided in Sections 1 and 2 of this Article.

Section 4. The Union agrees that if there is any violation of Section 1 of this Article by its members, the Union will promptly renounce such action and order the employee to abandon such acts and to take such other action, which it deems reasonable and appropriate to bring about compliance with the terms of this Agreement.

Section 5. Employees who violate any of the provisions of Section 1 of this Article are subject to immediate discharge or other disciplinary actions at the Company's sole discretion. Taking part in the action prohibited in Section 1 of this Article shall be just cause for such discharge or other disciplinary action, regardless of the difference in degree of such discipline. In any grievance arising under this Section, the sole shall be whether or not the Grievant participated in the restricted conduct and the action taken by the Company shall not be changed. Employees who make a bona fide effort to work or return to work immediately after instigation of the unauthorized action and who are prevented from doing so by the strikers will not be terminated as participants in the restricted conduct.

Section 6. The Company agrees that in the event of any strikes or work stoppage during the term of this Agreement, there shall be no liability in any event on the part of the Local Union and/or the International Union, or any of its officers, agents or representatives in such capacity for damages resulting to the Company from such action, provided the Local Union and/or the

International Union have taken the actions provided in Section 4 of this Article, unless such action has been approved and ordered by either the Local Union and/or the International Union, respectively, in accordance with the constitutional requirements.

Section 7. The Union further agrees that, in event of any violation of this Article, the Company may, at its option, request immediate arbitration.  The Federal Mediation and Conciliation Service (FMCS) shall be requested by telephone, facsimile, telegram, letter or personal contact to provide a list of five (5) arbitrators (who shall each be a member of the National Academy of Arbitrators) who shall be available for such immediate arbitration.  The arbitrator shall be selected under the procedures approved by the FMCS.  If the Union refuses to participate in arbitration, the FMCS is authorized and directed to proceed ex-parte if necessary.  The hearing shall be held, if possible, within forty-eight (48) hours of the request to the FMCS.  The parties shall file no post-hearing briefs, shall request no continuances and shall request a ruling at the conclusion of the hearing.  The arbitrator is authorized to issue an appropriate award including, but not limited to, an order to cease and desist.

Section 8. Each party shall bear its own expenses in connection with the arbitration proceedings and equally share the fee and expenses of the arbitrator (unless such hearing is held ex-parte) and such other expenses as may be incurred by mutual agreement. All other expenses shall be borne by the party incurring them and neither party shall be responsible for the expenses of witnesses called by the other.

### ARTICLE 20 - DISCPLINARY NOTICE

Any written warning or suspension notice issued to an employee shall not remain in effect for a period of more than twelve (12) months from the date of said warning notice, provided there is no recurrence of a same or similar incident within that twelve (12) month period.

### ARTICLE 21 - HOURS

Section 1. The regular work week shall be forty (40) hours per week for a five (5) consecutive day period Monday through Saturday inclusive; and the regular work day shall be eight (8) hours per day.

Section 2. The hours for day workers shall be 7:00 a.m. to 3:30 p.m. Monday through Friday or Tuesday through Saturday.  The hours for night workers shall be 3:00 p.m. to 11:30 p.m. Monday through Friday or Tuesday through Saturday.  The hours for third shift workers shall be 10:30 p.m. to 7:00 a.m. Monday through Friday.  Any change of an individual employee's working schedule

shall require at least seven (7) calendar days notice in writing.
The Company may ask for volunteers to work other alternate
schedules to meet customer requirements, and if there are
volunteers an alternate schedule may be used only for an employee
that volunteers.

In implementing the Tuesday through Saturday work week schedule,
the Company shall establish a rotating schedule of day workers
(1st shift employees) and night workers (2nd shift employees).
Initially, up to 2 employees from the Assembly assignment and up
to 3 employees from the Retoucher assignment will be scheduled
each week on the Tuesday through Saturday work week schedule from
the 1st and 2nd shifts.  The employees working in each of the
Assembly and Retoucher assignments on the 1st and 2nd shifts will
rotate on a regular basis, weekly if possible, between the Monday
through Friday and Tuesday through Saturday schedule.  Employees
will not be scheduled or required to change shift assignments
solely due to the Tuesday through Saturday schedule, except for
Saturday work which under normal circumstances will be a 1st shift
schedule for all employees on a Tuesday through Saturday
schedule.  To accommodate different situations the starting and
ending times of the Saturday shift, for Tuesday through Saturday
scheduled employees, may vary from the established 1st shift
times. If additional employees are needed on the Tuesday through
Saturday schedule, the Company will first ask for additional
volunteers, and if there are an insufficient number of volunteers
current employees will not be required to change to the Tuesday
through Saturday schedule and the Company may hire employees
directly to fill these openings.

Section 3. All day or night working hours shall be consecutive,
except for a luncheon period as hereinafter provided.  On Friday
nights or nights that precede a holiday, the regular hours shall
extend to the usual hours of quitting.

Section 4. When a permanent opening becomes available on any
shift, not including manning of new equipment, competent
employees with the highest seniority on other shifts shall be
given the first choice of filling such openings.  After such
opening is thusly filled, no other employees can claim such a
situation, except with further provision that notice of such
situation shall be posted for fifteen (15) working days so that
employees who may be absent through illness or vacation, within
48 hours after their return claim such situation; provided, that
a new employee may work up to thirty (30) days on any shift prior
to the application of the provisions of this Section.  Any
deviation from this Section shall be resolved by mutual agreement
of the Union and the Company.

## ARTICLE 22 – CALL-IN AND REPORTING PAY

Section 1. An employee working under a call-back shall be guaranteed a minimum of four (4) hours pay at the prevailing overtime rate. An employee who works four (4) or less hours on a call-back shall receive the minimum of four (4) hours pay at the prevailing overtime rate. In no instance shall an employee receive less than the minimum specified herein while on the call-back status. A call-back is defined and applying only to regular employees who are requested to return to work after they have left the plant and its premises. If any employee is requested to report back to work prior to his leaving the plant and its premises, it will not be considered a call-back as outlined above.

Section 2. It is agreed that any employee who reports for work shall receive not less than a full day's pay except in the event of lateness, voluntary leaving before the end of shift, or short shifts to share the work, or unless the employee has been notified the previous working day that there will be no work or less than a full day's work. In the latter case the employee will receive no less than four (4) hours of continuous work pay exclusive of the regular lunch period. This clause shall not apply where fire, flood, explosion, bombing, earthquake, power or mechanical failure of equipment, or any other emergency beyond the Company's control making it impossible to start or continue work in the department in which such employee works.

Section 3. An employee injured while working on the job and therefore unable to finish their day's work shall be paid for a full day.

Section 4. An employee may take up to five unpaid days away from work as personal or sick time without prior notice or approval in each contract year (May 1 through April 30). An employee must still call in and report that they will not be at work prior to the start of the scheduled shift. An employee may elect to be paid for an unpaid day away from work by using vacation pay. The employee must submit a request upon return to work stating whether vacation pay will be used for the day of work missed. Vacation pay when paid in this manner does not qualify as a paid day off for the purpose of computing overtime under Article 25 of the contract.

## ARTICLE 23 – REDUCED HOURS

Section 1. Should conditions warrant the reduction of working hours, the Company shall designate the hour of work; provided such reduction shall be equal on each day of the week and shall affect the entire working force. Notice of any changes in the schedule of hours shall be posted prior to one (1) full working

day before such change becomes effective.  Change of working schedule shall not occur more than once in a week.  In case of a reduction in hours, the work week shall not be reduced by more than five (5) hours less than the contractual work week.

Section 2. When the schedule of working hours is reduced an employee, who is not scheduled for Saturday or Sunday as part of the reduced workweek, shall be paid at the rate of time and one-half for all hours worked on a Saturday or Sunday if the employee has worked all hours scheduled during their regular reduced hour workweek.

## ARTICLE 24 – SENIORITY

Section 1. Permanent layoffs within a job classification shall be based on job classification seniority.  The employee with the lowest job classification seniority shall be permanently laid off first.  Such employee shall then be reassigned by the Company to a job vacancy created by the layoff of the most junior employee in the department, provided the employee is qualified to perform the duty requirements of the job classification.

Section 2. Permanent department layoffs will be based on department seniority.  The employee with the lowest department seniority shall be laid off first.  Such employee shall be reassigned by the Company to a job vacancy created by the permanent layoff of the most junior employee in the plant provided the employee is qualified to perform the duty requirements of the job classification.

Section 3. Permanent plant layoff will be based on plant seniority.  The employee with the lowest plant seniority shall be laid off first.  Recall from plant layoff shall be in the reverse order of layoff, provided the employee is qualified to perform the work of the vacant job classification.  Notice of recall from plant layoff shall be made to the employee's last address of record by Certified Mail, Return Receipt Requested.  A copy of the recall notice will be given to the Shop Delegate.

Section 4. Seniority shall accumulate for six (6) months during leaves or absences from employment and shall be broken by discharge for just cause, resignation, transfer out of the bargaining unit, permanent total disability or a layoff of more than six (6) months.

## ARTICLE 25 – OVERTIME

Section 1. Overtime shall be worked when necessary with the assignments first being offered to the fully experienced

employees.  The refusal of employees to work overtime shall not
be deemed a breach of the contract, nor shall employee be
disciplined or discriminated against for refusal to work overtime
after working a reasonable amount of overtime. If overtime is to
be worked on a regular workday, notice shall be given as soon as
possible on the day on which such overtime is to be worked.

Section 2. Overtime rates shall be on the following basis:

> a. Overtime will be computed after forty (40) hours of paid
> or excused time during employees scheduled workweek.  For
> purposes of this clause: (1) regular work days and paid
> vacation or holiday leave are considered paid hours; (2)
> if an individual volunteers to start work late or to
> leave work early at the Company's request or approval,
> the unpaid hours not worked shall be considered excused
> time; and (3) if an individual does not show up for his
> assigned shift and it is ultimately considered a "no pay"
> day, the time missed will not count toward the required
> forty (40) hours required for computation of overtime.

> b. For work done on holidays an employee shall receive one
> and one-half (1½) times his hourly wage plus his regular
> full pay for his normal workday.  All work done on a
> holiday in excess of a normal work day shall be paid at
> one and one-half (1½) the regular straight time rate.

Section 3. If there is overtime to be worked, Journeypersons and
Imaging Technicians in that classification(s) must be asked to
work the overtime.  If for any reason they cannot work the
overtime in the classification when requested, the employee
capable of performing the necessary work may then be asked to
work the overtime.

### ARTICLE 26 – LUNCH PERIOD

A uniform interval of one-half (1/2) hour shall be allowed for
lunch each day or night.  In no case shall the lunch period be
considered the time of the employer.

### ARTICLE 27 – HOLIDAYS

Section 1. The employees covered by this Agreement shall be
entitled to receive the following Holidays or days observed as
such Holidays:

New Year's Day
Martin Luther King, Jr. Day
Memorial Day
July Fourth
Labor Day
Thanksgiving Day

17

The Day after Thanksgiving
Christmas Day
Christmas Eve
New Year's Eve

Section 2. When one of the full shift holidays mentioned in Section 1 above falls on a non-scheduled day (e.g. Sunday), the Company shall have the option of giving a day off with pay on a regularly scheduled day either preceding or following the holiday (unless one of those days is a legally celebrated holiday; in which event the option shall include the day following that holiday). The Company shall give posted notice regarding the option no less than ten (10) working days prior to the holiday.

Section 3. Any employee who works on any holiday shall be paid at one and one-half (1½) the straight-time rate, which is in addition to holiday pay. All work performed on a holiday in excess of a regular work day shall be paid for one and one-half (1½) times the regular straight-time rate.

Section 4. To qualify for holiday pay, the employee must work the last scheduled regular work week day before the contract holiday and their first scheduled regular work week day after the contract holiday, exclusive of Saturday or Sunday and except in the case of illness, accident, death in the family or with permission of the Company.

Section 5. If one of the holidays mentioned above falls on a regularly scheduled work day during an employee's vacation, the employee shall be entitled to one additional day of vacation with pay to be taken off sometime between May 1 and April 30, as may be mutually agreed to between the employee and the Company in order to permit the orderly operation of the plant.

Section 6. The holiday for the first night shift and the second night shift shall be on the actual night of the holiday.

Section 7. An employee, who is absent due to a temporary layoff shall be entitled to pay for such holidays that fall on a regularly scheduled work day within the first thirty (30) days of absence.

Section 8. The night shift rate is to be paid for a holiday, provided the employee is working on the night shift when the holiday occurs.

### ARTICLE 28 — VACATION/JOURNEYMEN

Section 1. Employees shall be entitled to and receive vacations on the following basis and subject to the following regulations:

The amount of an employee's vacation shall be determined as of
their employment date with the Company prior to May 1ˢᵗ, and such
days shall be given to the employee during the year following
that May 1ˢᵗ.

The amount of vacation pay shall be computed at the employee's
regular weekly or daily rate, as the case may be.  If an employee
worked on the night shift during the twelve (12) months preceding
May 1ˢᵗ, their regular rate shall include:

> a. The full night shift premium if they worked 50% or more
>    of their time on the night shift.

> b. Half the night shift premium if they worked at least 33
>    1/3% but less than 50% of their time on the night shift.

> c. None of the night shift premium if they worked less than
>    33 1/3% of their time on the night shift.

An employee eligible to receive night shift premium for vacation
pay shall receive the premium prevailing for the night shift on
which the majority of the time was worked.

Section 2. Each Journeyman employed as of May 1, 2000, who has
been employed for a period of six (6) years or more shall receive
four (4) weeks vacation pay: two (2) days pay of each five (5)
weeks of employment (but not any fraction thereof).

Each Journeyman employed as of May 1, 2000, who has been employed
for a period of eighteen (18) years or more prior to May 1ˢᵗ of
any year, shall receive (5) weeks vacation with pay.  For
eighteen (18) or more years of employment with the Company: two
and one-half (2½) days pay of each five (5) weeks of employment
(but not any fraction thereof) from the previous May 1ˢᵗ.

Section 3. Employees must take all earned vacation as time off,
except employees eligible for three (3) weeks or more of vacation
may sell one (1) week of vacation by electing vacation pay in
lieu of time off.  Pay for such week will be made on the first
pay date following the week in which the employee notifies the
Company of such elections.  An employee may not accumulate
vacation from one year to another and vacations may not be
granted or taken as time off prior to the determining May 1ˢᵗ.

Section 4. If the employment of any employee is terminated
permanently for any reason whatsoever, except as herein provided,
the employee shall be entitled to receive within five (5) days
after their termination or on the next pay day, whichever is
later, their vacation benefit earned to date.

Section 5. An employee entering the Military Service shall be
paid such accrued vacation on their last working day before

entering service based on Section 2 of Article 28.  After return from Military Service such employee shall be paid vacation credits for time worked between return and the next May 1st, based on Section 2 of Article 28.

### ARTICLE 29 – SCHEDULING VACATION/JOURNEYMEN

Section 1. Employees shall receive their vacation at the time they desire subject to approval by the Company in order to permit the orderly operation of the plant or department.

- a. Three weeks paid vacation to be had in consecutive days between May 1st and April 30th if the employee so desires.
- b. Employees eligible for more than three (3) weeks vacation shall be permitted to schedule their earned vacation benefits in excess of three (3) weeks in five (5) consecutive days or as scheduled individual days at any time during the calendar year.
- c. Two weeks paid vacation to be had in consecutive days between June 15 and September 15 if the employee so desires.
- d. Journeymen may take vacation in less than one-half day increments.
- e. An employee can carry no more than eight (8) days vacation in reserve in the last two months of the contract year without prior approval from management.

Section 2. In the event of a cessation or suspension of operations, earned vacation credits shall be deemed wages earned and shall be paid forthwith.

### ARTICLE 30 – VACATION/IMAGE TECHNICIANS

Imaging Technicians and Pre-Press Support employees shall be entitled to and receive vacation on the following basis and subject to the following regulations:

Definition:  The term "day" is a working day of the same number of hours regularly worked.  The sixth and seventh days of the week or holidays occurring in a period of absence are not counted as vacation.  The term "anniversary date" is the completion of one (1) year following date of hire and the same date in each succeeding year of employment.

Vacation for each full-time employee shall accrue monthly but may not be taken until successful completion of the initial evaluation period, as well as any extension of same, in accordance with length of continuous employment as follows:

- During the initial evaluation period, as well as any extension of same, at the rate of 1 day vacation per

evaluation period.

- After successful completion of the evaluation period up to and including the third anniversary date, at the rate of eighty-three one hundredths (0.83) days per month.

- After the third anniversary date up to and including the sixth anniversary date, at the rate of one and one-fourth (1¼) vacation days per month.

- After the sixth anniversary date, at the rate of one and two-thirds (1 2/3) vacation days per month.

Accrued vacation will be paid on termination. Vacation will be recorded monthly as of the last day of each month and may be used as accrued.

When a full-time employee can be spared from his/her duties, vacation will be granted, on a seniority basis, for personal reasons. Your supervisor will have the authority to approve or deny vacation. Employees are responsible for cooperating with Management in scheduling vacation and requesting leave when their services can be spared. Denial of a request for vacation will be based upon factors that are reasonable and equitable (Vacation will be arranged around other employees' time off and production demands). Employees are encouraged to use their vacation to insure needed rest and relaxation.

Permission for vacation MUST be obtained at least 24 hours in advance. Any attempt to call in or request same day as vacation day will be denied except as provided in Article 22, Section 4, and failure to report to work will be considered an unexcused absence.

VACATION CARRYOVER

Employees may carry forward accrued vacation based on years of service in accordance with the following schedule, which are maximum amounts that may be carried forward:

Up to 3 years ................................................................................. 17 days

More than 3 years, less than 6 years ...................................... 20 days

More than 6 years, less than 10 years ................................... 23 days

More than 10 years ........................................................................ 26 days

## ARTICLE 31 - JURY DUTY

An employee required to be absent from his employment to serve on the jury shall be paid his regular wages minus any pay received as such juryman for such time as his is required to be absent, and such absence shall be supported by a statement signed by the Clerk of the Court certifying as to each day of jury duty. Employees dismissed at twelve noon or before shall be required to report to work for the balance of the day shift, or full shift, should they be employed on the second or third shifts. Employees serving on the jury and working a full night shift or third shift shall receive their full pay.

## ARTICLE 32 - BEREAVEMENT LEAVE

Employees will be permitted up to three (3) working days of paid funeral leave commencing the date of death or the day immediately following the death of his mother, father, mother-in-law, father-in-law, brother, sister, spouse, child, or any relative who has established residence with the employee. One of the three days may be the date of the funeral, provided the employee actually attends the funeral.

It is agreed that no leave will be granted for Saturdays or Sundays or if the Employee is on vacation or is not actively working because of illness, leave of absence, layoff or any other reason.

## ARTICLE 33 - LEAVE COVERAGE

A Journeyman may be trained in other classifications for purposes of broadening their skill base and/or to cover openings in another classification if their work load permits. Employment decisions will be based on their regularly scheduled classifications.

## ARTICLE 34 - NOTIFICATION OF LAYOFF

Section 1. It is agreed by the Company that no employee who has worked for the Company for thirty (30) calendar days or more shall be laid off permanently by the Company without five (5) working days notice or the pay in lieu thereof. Any employee who voluntarily quits without five (5) working days notice to the Company shall forfeit five (5) days vacation pay.

Section 2. Before the discharge of a Shop Delegate, the Company must notify the Union of is intention and shall give the Union a reasonable opportunity to confer with the Company.

Section 3. In the event of a layoff for less than a week of any employee, such employee shall be notified no later than lunchtime of the previous day. In the event of a layoff of a week or more

of an employee working for the Company at least thirty (30) calendar days, the Company must give at least 3 working days notice.

Section 4. The day of the notice of such layoff or discharge (Sections 1 and 3) shall be counted as part of the notice period.

## ARTICLE 35 – SEVERANCE PAY

Section 1. In the event of the termination of employment due to merger or sale of the plant or plants covered by this contract or due to layoff for economic reasons, each employee with one year of continuous employment with the Company will receive one (1) weeks' pay at his regular straight-time base pay and each employee with two or more years of continuous employment with the Company will receive two (2) week's pay at his regular straight-time base pay.

Section 2. In the event that an employee is laid off or is to be laid off for more than thirty (30) consecutive days and this is known at the time of the layoff, he may request and shall receive his accrued severance pay at the time of layoff, or in any event may request and shall receive his accrued severance pay at any time after such thirty (30) day period.

## ARTICLE 36 – SHOP DELEGATE

For as long as he hold this office, the duly authorized Shop Delegate shall exercise the highest seniority in their department with respect to permanent employment on the day shift, temporary or permanent layoffs and division of work.  The Shop Delegate shall be considered the representative of the Union and shall not be subject to discipline by the company for discharging his responsibilities as a Union representative.

## ARTICLE 37 – FULL-TIME UNION SERVICE

In the event an employee is elected by the membership or appointed to be a full time representative to represent the International or Local Union, he shall be extended a leave of absence from the Company; and retain all seniority and other benefits due at the time he shall take office until such time when he returns to the Company.

## ARTICLE 38 – UNION ACCESS

Representatives of the Union shall have access to the plant by permission of the management, which permission shall not be unreasonably withheld.

## ARTICLE 39 – BULLETIN BOARD

The Company shall provide a bulletin board in a mutually satisfactory place for official Union notices.

### ARTICLE 40 – HEALTH AND WELFARE FUND

Section 1. Effective the first day of the month following ratification of this contract the Company will contribute eighty percent (80%) of the cost per member per month for the employees shown in Appendix 1 to this contract to the Lithographers and Photoengravers Welfare Fund.  Only employees shown in Appendix 1 will be covered through the Fund.  However, in no event shall the Company's monthly contribution per employee exceed $600.

Such contribution shall be used to provide for the benefit of such employees, employees temporarily unemployed and retired employees, death, hospitalization, accident and sickness, surgical, medical expenses and like benefits.

Coverage shall also be extended to full-time officers and employees of the Union, the Health and Welfare Fund, and the Training Fund, provided that contributions are made on their behalf.  Hospitalization, surgical and medical expense and like benefits may include dependents of such covered employees.  If the Federal Government legislates a National Health Program during the term of this Agreement, the Company and the Union agree to meet promptly to determine the impact of such legislation on the existing Health and Welfare Program.

Section 2. The Company agrees to make contributions on behalf of employees, laid off through no fault of their own, in the amount stated in the above Section for a period of one month after their last day of employment.  It is further agreed that they will be eligible to participate in the employed members welfare program for that month as if they were still employed.

Section 3. Payments to the Fund shall be due and payable on the first of the month for which they are due.  If the Company is in default in payment required under Article 36 for more than thirty (30) days, it shall be liable for and agrees to pay such legal and court costs incurred in collection proceedings.

Section 4. Such contributions for new employees not already covered by this Fund through another Local company shall commence the first of the month after the employee has worked for the Company for four (4) weeks.

Section 5. The Joint Welfare Fund will be administered by a Board of Trustees, composed of an equal number of Union representatives and Company representatives.  The Board of Trustees shall have the right to designate the kind, source and manner of purchase of

such insurance and methods of contributing and paying out of such funds.  The Trust Agreement shall provide for a method of reaching decisions in cases of disagreements among the Trustees.

Section 6. The parties agree that the benefits payable under such Fund shall in no event be terminated solely by reason of strike or lockout.

Section 7. Employees, other than the employees shown in Appendix 1, will be provided Health and Welfare benefits, which include medical, dental, vision, short-term disability and life insurance coverage, on the same basis as these benefits are provided to non-bargaining unit employees at the Premedia Washington location including employee contributions.  If Health and Welfare benefits are changed for non-bargaining unit employees, such changes will apply to employees covered by this agreement, including employee contributions, and there shall be no demand for collective bargaining negotiations with respect to any such changes.

### ARTICLE 41 – PAYMENT OF WAGES

Section 1. Payment of wages shall be by check or cash in accordance with the office procedure of the Company.

Section 2. Effective May 1, 1997, the Company shall withhold six percent (6%) for Lithographer and Photoengraver members of gross wages but in any event not less than $2.50 from each employee's weekly wages and shall pay such amounts so withheld monthly to the Trustees of Inter-Local Pension Fund, Graphic Communications International Union, upon receipt of an assignment from the employee, along with an appropriate report form furnished by the Union to permit proper crediting to the employee's account in the Fund.

Section 3. Wages withheld and paid separately under Section 2 shall be forwarded or paid within ten (10) days from the month for which they were withheld.

### ARTICLE 42 – SUPPLEMENTAL RETIREMENT AND DISABILITY FUND

Section 1. The Company will contribute six percent (6%) exclusive of overtime hours worked, earned by each employee covered by this Agreement to the Graphic Communication Conference/IBT Supplemental Retirement and Disability Fund.  The term "gross wages" shall mean all monies earned by an employee including premiums, shift differentials, holidays, vacations, and any other wages paid under this Contract but shall not include wages earned for overtime hours worked.

Section 2. The Graphic Communication Conference/IBT Supplemental Retirement and Disability Fund, hereinafter referred to as the Retirement Fund, is established under an Agreement and

Declaration of Trust, administered by a Board of Trustees composed of equal numbers of Company and Union representatives for the purpose of providing retirement, disability and/or associated benefits for employees or the beneficiaries on whose behalf payments are made by the Company and for financing the expenses, operation and administration of the Retirement Fund. The parties agree that participation in and coverage by the Retirement Fund may be extended to the employees of any other Company under contract with the GCIU and to the full-time employees and Officers of the International Union or any of its Local Unions and to the full-time employees and Officers of any other Union Entity or Company-Union entity, provided that payments are made on behalf of such employees or Officers and to all others covered under the terms of the Agreement and Declaration of Trust.

Section 3. All payments to the Retirement Fund shall be by check or other order of money payable to the Graphic Communication Conference/IBT Supplemental Retirement and Disability Fund and shall be transmitted monthly to the office of the Retirement Fund. Concurrent with the payment by the Company, the Company shall make such reports as the Trustees deem necessary for the purpose of properly administering the Trust and payment of benefits. All payments by the Company required hereunder shall be due and payable within ten (10) days after the payroll period of the week or month for which such payment is required.

Section 4. If the Company is in default in the payments required under the above paragraphs for more than thirty (30) days, it shall be liable for and agree to pay such legal and court costs incurred in collection proceedings.

Section 5. The Company agrees to be bound by the terms of the Agreement and Declaration of Trust, a copy of which is hereby acknowledged by the Company as having been received by them, establishing the aforesaid Retirement Fund, as the same may be amended from time to time, and further agrees to be bound by the rules, regulations and plans, as may be adopted by the Trustees from time to time. The Company further agrees that the Company-designated Initial and Successor Trustees under the Agreement and Declaration of Trust, as the same may be amended from time to time, are so designated as Employer-Trustees on its behalf.

### ARTICLE 43 - STRUCK WORK

The Company agrees that it will not render production assistance to any employer, any of whose plants is struck by any Local of the Graphic Communication Conference/IBT authorized by the International, or where members of any such Local or the International are locked out, by requiring the employees covered by this contract to handle any work farmed out directly or indirectly by such employer, other than work which the Company

herein customarily has performed for the employers involved in such strike or lockout.

The Union reserves the right to require the Company not to render production assistance to any employer, any of whose plants is on strike or if any of its employees are locked out; by requiring the employees covered by this contract to handle any work farmed out directly or indirectly by such employer other than work which the company herein customarily has performed for the employer involved in such strike or lockout.

The Company agrees that it will not discharge, discipline, or discriminate against any employee because such employee refuses to handle any work of the type described in this Struck Work clause.

## ARTICLE 44 - NEW MACHINES OR PROCESSES

Section 1. The Company agrees that in the event of the installation of new or improved machines or processes for work covered in the jurisdiction clause of this contract, such machines or processes must be operated by employees covered under this contract under a scale of wages and conditions of work agreed upon by the Joint Committee of four members, each party hereto choosing and appointing two members thereof.  The wages, whenever finally adopted, shall be retroactive to the date of beginning of commercial operation of such equipment or processes. The Company further agrees to give the Union notice in writing prior to the installation of any such equipment or adoption of new processes and to meet with the Union upon request for consideration of the handling of such machines or processes, the conditions of work and any other matter relating thereto.  The failure of the Joint Committee to reach agreement on handling of such processes, the conditions of work and any other matter relating thereto shall be submitted to the Joint Standing Committee under the Grievance and Arbitration Article.

Section 2. The Company agrees that it will not change its present methods of lithographic production before giving thirty (30) days notice of such proposed change to the Union in order that the parties may meet to consider whatever other related changes are required.  This clause relates only to changes of method within the plant.

## ARTICLE 45 - TECHNOLOGICAL DEVELOPMENT

Section 1. The parties recognize that technological developments, if they are to further the continued growth of the graphic arts industry, place responsibility upon companies to explore and promote new markets and require the cooperation of the Company and the Union in the development of new skills.

Section 2. In order to insure the orderly and most advantageous introduction of new types of equipment and new processes, the parties agree to meet upon request of either party to consider and develop programs for the retraining of employees in new skills so that there shall be an adequate availability of new skills required.

### ARTICLE 46 – IDENTIFICATION OF WORK

(Applies only to Companies that have executed Graphic Communication Conference/IBT Label License Agreement)

The Union Label is the exclusive property of the Graphic Communication Conference/IBT and its use is authorized only by the express direction and consent of the Graphic Communication Conference/IBT upon execution of, and compliance with, the Standard Union Label License Agreement.

### ARTICLE 47 – PLANT REMOVAL

In the event that a Company shall desire to discontinue or relocate any operations covered by this Agreement, the Company will make every reasonable effort to give ninety (90) days notice in writing to the Union of any such contemplated action.

In the event of a transfer of all or any part of the Company's operation to another plant each employee who loses this employment as a result of the transfer shall be considered for opportunities at other Quebecor World locations.

### ARTICLE 48 – NO TRANSFER OF EQUIPMENT

The Company agrees that it will not physically transfer any lithographic equipment to any other plant within Local 285's jurisdiction, which results in the removal of jobs or work from under this Agreement.

### ARTICLE 49 – DEFAULT IN PAYMENTS

In the event that the Company shall be in default for more than thirty (30) days in any payment required to be made hereunder to any Pension Welfare, or Education Fund, or other Fund, then in addition to any other rights or remedies which the Union may have, under this contract or the law, it may submit the matter to the Joint Standing Committee under the provisions of Article 40 – Grievance and Arbitration unless the Company has made the required payment.

## ARTICLE 50 — DUES CHECK-OFF

The Company agrees that upon receipt of written authorization in the form attached hereto, the Company will deduct Union dues (weekly or initiation fee) in the amount specified below, in the following manner:  dues shall be deducted in advance for the month in which they are due.  They shall be transmitted to the Local Office on a form supplied by the Local no later than the twentieth (20th) of the month following the month in which they were deducted.

Such authorization shall not be revocable for a period of one year or until the termination date of this contract, whichever is earlier, and the revocation shall not be effective until ten (10) days after written notice thereof has been given to the Company.

## ARTICLE 51 — CHECK-OFF AUTHORIZATION

The undersigned hereby authorizes and requests the Company to deduct monthly from his wages the sum of $  representing his Union dues, and to pay over said sums so deducted every month to Local 285, Graphic Communication Conference/IBT.  It is understood that this check-off authorization may not be revoked by the undersigned sooner than one year from the date hereof or the termination date of the Agreement between the Local and the Company, whichever occurs sooner; and that revocation may be effected only upon ten (10) days written notice from the undersigned to the Company.

## ARTICLE 52 — CREDIT UNION CHECK-OFF

The Company agrees that upon receipt of written authorization from any employee it will deduct from their weekly pay check the amount specified in said authorization and transmit same monthly, by the twentieth (20th) of the month, to the Engraving and Printing Federal Credit Union for said employee's account herein.

## ARTICLE 53 — SUBCONTRACTING

No Company shall initiate any subcontracting which will cause any reduction in their work force or which will delay the recall of employees on temporary layoff unless mutually agreed that such subcontracting is reasonably required by their established operating practices.

## ARTICLE 54 — PICKET LINES

The failure or refusal of any employee to pass through or work behind an authorized, lawful picket line established at the plant by this Union shall not be deemed a breach of this contract, and

the Company shall not discharge, discipline or otherwise
discriminate against such employee.

### ARTICLE 55 — AGREEMENT CONTINUITY

The Company agrees that all obligations of this contract become a
condition of sale, transfer, lease or assignment.

### ARTICLE 56 — SEPARABILITY

Each and every clause of this contract shall be deemed separable
from each and every other clause of this contract to the end that
in the event that any clause or clauses shall be finally
determined to be in violation of any law, then and in such event
such clause or clauses only, to the extent only that any may be
so in violation, shall be deemed of no force and effect and
unenforceable without impairing the validity and enforceability
of the rest of the contract including any and all provisions in
the remainder of any clause, sentence or paragraph in which the
offending language may appear.

### ARTICLE 57 — INTERNATIONAL APPROVAL

The term and conditions of this contract are subject to review of
the International and contract does not become a valid and
binding document without the approval of the Conference
President.

Such approval does not, however, under any circumstances make the
International responsible for the observance of this contract or
for any breach thereof.

## ARTICLE 58 – DURATION OF CONTRACT

This Agreement is to become effective on May 1, 2005 and shall terminate on April 30, 2008.

For Local 285
Graphic Communications Conference
International Brotherhood of Teamsters

For Quebecor World
Premedia – Washington

_____
Ed Williams
President, Local 285

_____
Ron Hines
Vice President/General Manager

_____

_____
Daniel Daywalt
Group Vice President
Human Resources

_____

_____
David Porch
Group Director, Human Resources

_____

_____

_____

### MEMO OF UNDERSTANDING BETWEEN

### QUEBECOR WORLD PREMEDIA – WASHINGTON

#### AND

### LOCAL 285 GRAPHIC COMMUNICATIONS CONFERENCE
### INTERNATIONAL BROTHERHOOD OF TEAMSTERS

The above stated parties have agreed that the following defines the work that may be done by non-union personnel without infringing upon what is considered union bargaining unit work.

Due to the new technology and the use of computers by union and non-union workers, bargaining unit work can no longer be defined by equipment usage; it must now be defined by function.

The current usage of the computer to view work should be equated to when film was stored in drawers and the non union personnel accessed by physically taking the film from the drawers to look at it toward satisfying customer requirements.  Non-union personnel may use the computers to access data, but may not alter it in any way.

Often they must open high-res images in order to view whereas previously they simply opened the drawers and took out the film to look at it.

With actual film, non union personnel were not responsible for collating the film and handing it over to the strippers to perform the actual work.  With electronic data, the non-union personnel may receive and organize without editing the data before turning over to manufacturing. This is the equivalent to collating now done on the computer.  It may be necessary for the non-union personnel to send electronic data.

To further clarify the parameters of work that may be done by non-union personnel so as not to infringe upon "bargaining unit work" a list of duties is being provided.

No bargaining unit employee will be displaced, laid-off or have hours of work reduced as a result of non-bargaining unit employees performing these tasks.

Non union personnel can perform the following listed tasks at any time:

- Receive all customer-supplied materials via disk or electronically.

- Preflight customer supplied files, provide laser for internal direction.
- Transfer customer supplied files to a designated customer folder on the production server.
- Re-populate production server with needed assets for current production needs.
- Copy to disk or send electronically all files associated with the production process.
- Produce color copies from customer supplied files.

Non union personnel will not perform the following listed bargaining unit work tasks:

- Print any document to a production RIP.
- Manipulate an image or document, i.e., change size, color correct, save or save as.
- Place an image in a document or any page layout document for production purposes.
- Produce proofs for customer.
- Create alternate file versions from final file.

Signed this 30th day of ___August___ , 2005.


_____
For:   Quebecor World Premedia

_____
For:  Local 285
Graphic Communications
Conference-International
Brotherhood of Teamsters

_____
For: Quebecor World Premedia

MEMO OF UNDERSTANDING BETWEEN

QUEBECOR WORLD PREMEDIA - WASHINGTON

AND

LOCAL 285 GRAPHIC COMMUNICATIONS CONFERENCE
INTERNATIONAL BROTHERHOOD OF TEAMSTERS

The above stated parties have agreed that the following defines
the manner in which Quebecor World Premedia will process requests
for seminars and training.

Eligible employees that are seeking training must submit a
"Seminar/Training Request Form" to the human resources
representative prior to enrolling in any training course.
To be eligible for payment approval must be obtained before
registering for the training program.

The training request will be evaluated and approved or denied.
Factors such as: job relevance, course content, course provider,
facility workload, economic factors, and employee work
performance will be used in the approval process.

Payments for approved seminars/training courses will be made
after successful completion of the course and proper
documentation of registration and completion have been submitted.
"Successful completion" will be defined with the original
approval of the program.

Employees will not receive payment of wages for approved
seminars/training that occur during their normal work hours.

Signed this **30TH** day of _August_ , 2005.


For:   Quebecor World Premedia

For: Local 285
Graphic Communications
Conference-International
Brotherhood of the
Teamsters


For: Quebecor World Premedia

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

GRAPHIC COMMUNICATIONS CONFERENCE/INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 285

QUEBECOR WORLD PREMEDIA - WASHINGTON

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Dist. of Columbia
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Prince George, MD
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Peer & Gan LLP, 1730 Rhode Island Ave., NW, Suite 307, Washington, D.C. 20036
202-223-1900

ATTORNEYS (IF KNOWN)

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ◉ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E. General Civil (Other)**    **OR**    ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| O  G. *Habeas Corpus/2255* | O  H. *Employment Discrimination* | O  I. *FOIA/PRIVACY ACT* | O  J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ◉ K. *Labor/ERISA (non-employment)* | O  L. *Other Civil Rights (non-employment)* | O  M. *Contract* | O N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☒ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   O 2 Removed from State Court   O 3 Remanded from Appellate Court   O 4 Reinstated or Reopened   O 5 Transferred from another district (specify)   O 6 Multi district Litigation   O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

29 U.S.C. Section 185. Plaintiff hereby sues Defendant for breach of a collective bargaining agreement and to compel arbitration.

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** _____   Check YES only if demanded in complaint   **JURY DEMAND:**   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  November 9, 2006   **SIGNATURE OF ATTORNEY OF RECORD**  _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.